We have a couple of rules of the road. One of them is the time clock, which turns yellow when you have two minutes left, and when it's read, we ask you to conclude your remarks unless you're answering a question from the bench. Also, we are familiar with the briefs and record excerpts. We have not necessarily, in fact, probably not read the entire records, so we do appreciate record citations when those are appropriate. The first case of this morning is No. 2460118, United States v. Earnest, Klisch and Randolph. So I guess we'll hear first from Mr. Mueller. Thank you, Your Honor. May it please the Court, Good morning. The trial below involved charges, and I'm going to distinguish between what the charges were and what the actual evidence and testimony at trial was. The charges charged Mr. Earnest and the other defendants with several tax crimes stemming from their operation of a business in Jackson, Mississippi called Sunbelt Tax Service. The indictment was clear that that conspiracy started at January 1, 2015, to the present date of the indictment. What happened at trial, though, is that it was consumed with evidence, testimony, and argument from government counsel about another tax business, a conduct that occurred prior to the charge period, and included people who weren't included in this indictment, and also included, again, a business that was not charged by the grand jury. That's called American Tax Service. And of the two, I think, most important aspects of that evidence to focus on in our limited time this morning, I'm going to start with the government's use of, in calling three IRS revenue agents who had conducted what we're calling these civil record-keeping audits. The IRS parlance, they actually call them due diligence visits because they don't rise to the level of an audit. What they're checking in those visits is they're going into a tax preparation business, and they're checking the client files for documentation of certain tax credits that Congress has decided are so important that they're going to install a requirement that return preparers keep records documenting those credits. Beyond those specified credits, there is no requirement from Congress or anyone else for a tax preparer to keep any records in his or her files dealing with a customer. It's magnified here because the trial . . . the charges relating to Sunbelt Tax Service and the conduct that the government got into a trial all centered around these education credits. Where are you headed with this? You don't have a whole lot of time, so where are you headed with this? The 404B evidence, or where are you headed? Yes, Your Honor, I'm headed directly to the 404B evidence. The first category is these record-keeping audits, these civil record-keeping audits in which the government and the district court allowed the government to call three separate witnesses to testify about, again, whether or not certain documents were in files of a prior business that was not even charged in the indictment. These audits had to do with the time period and a business not charged in the indictment. More to the point, under 404B, under the Beecham two-part test, they don't even get past the first test, we believe, because the charges related to intentional tax fraud at Sunbelt. 404B is textbook. Beecham is an old case. It's still good law. There's nothing atypical about 404B evidence coming in and being used. It's definitionally prejudicial. That's why the prosecutors use it. There's no requirement under Beecham or his progeny that it be identical. You know that. It doesn't have to be identical in order to show fairness, so where within the arena of familiar 404B evidence do you say the reversible error occurs? Yes, Your Honor. I think this case is more consistent with instances in which this Court has reversed where 404B was admitted, either because it wasn't relevant to a matter other than character, you know, propensity evidence, although obviously under the second part, even if it is relevant to a matter other than character under the second prong of that test, then you apply, you know, the unfair prejudice, the likelihood to confuse the issues and so forth. This Court has reversed convictions in cases all cited in the brief, Cresdorne, Fortenberry, Guerrero, all cases where . . . What are you saying the error? The trial judge, very experienced, done a whole lot of these, you know, you have charge conference, et cetera. There's nothing unusual in terms of the proceeding. 404B is allowable. I'm just saying, where's the reversible error here? You know what it says? Yes, those cases are there, but what is it you say here that gets outside of the lines of what the judge should do? What aspect should we point? As Judge Jones said, we haven't read the entire record. We peeped at it, but what should we be looking at to meet up with what you argue? Thank you, Your Honor. What we would ask the Court to do is to compare the testimony of those three witnesses, that would be Revenue Agent John Thomas, Revenue Agent Lynn Wade, and Revenue Agent Robert Dunaway. Again, they're testifying . . . we're not here . . . of course it suggests that no 404B evidence can come in under this Court's precedence. What we're saying is here it was unprecedented in scope and relevance, and so what these prior audits were purported to come in for, right, the limited purpose that the judge instructed the jury these were supposed to be considered for, would have been for things like notice and, you know, and lack of mistake, things like that. But in reality, what the government did, and again, this is in our brief as well, if you look at what they argued in their opening and their closing, that's where this takes this out of the normal 404B case. They led with, in their opening, and this is . . . all the detailed record sites are at page 33 of our opening brief, but this is one example. They said, you're going to hear about how Casey and Crist, Mr. Ernest and Mr. Randall, prepared false tax returns together for a long time, starting at a tax preparation business called American Tax Service. And another instance . . . Were you trial counsel? I was trial counsel, yes, Your Honor. So that means you vigorously cross-examined these agents down every side road in terms of what they said and undermined them as much as you could, right? We did cross-examine them, Your Honor, yes, as best as we could. However, the prejudice that their mere presence . . . You're not objecting to them as the qualitative agents, you know, they're IRS agents, et cetera, so that's not your objective. Are you objecting to what they said was irrelevant? Yes, Your Honor. And what they said was they purported to testify that certain documentation was not present in files at another business that related to education credits. And why that's so important, and I'd like to . . . if I could just emphasize this quickly, the law did not require tax preparers in that time period, in the American tax time period, to keep any documents about education credits in their files. And so, that just compounded the confusion. The district court, even later in the case, expressed confusion. He thought they had been fined in these audits for not having documents related to education credits, but that actually wasn't what the fine was about. It was about these other credits that the law required you to have at that time. And so, again, we have this convoluted testimony where we can cross-examine those witnesses, sure, but they're talking about, you know, a visit that they made at another business ten years ago for which, you know, you sort of are stuck with what they testify about. But that change in law is vital there because that really reduces the relevance of those audits to even nil, in our opinion, even if they're marginally relevant under the Beecham analysis. The fact that there was no requirement for the primary credit that was at issue in the trial just increased . . . well, decreased the relevance and increased the likelihood to confuse the issues. Again, the district attorney in that citation in our opening brief as well even said something to the effect of I thought they were fined for education credits. And so, that's the principal prejudice with 404B on that. Related to . . . in addition to those three agents, there were eleven other witnesses, so a total of fourteen out of the twenty-two government witnesses, and they have not contested this in their response, gave testimony about conduct at American Tax Service. So, we have these three revenue agents who have no testimony at all to contribute to the charges. They're solely there to talk about these other audits. And then, you have eleven other government witnesses who may have some things to say about the charge business but also went into the prior business. Didn't the judge give the jury a charge that explained to them how to channel that evidence? The court gave limiting instruction when the 404B was invented. Did you object to the charge? Is the charge given in firm itself? I think the problem we have here is that the charge was . . . when you compare the charge to how the government actually used it, you're in conflict. I'm saying did you object to the jury charge that the judge used in order to explain to the jury what purpose that other evidence came in for, so they would not be confused about it, et cetera, et cetera. I'm saying did you object to the charge that the judge gave? I understand you object to it coming in. No, Your Honor. We did not object to the charge that was given. I would point to . . . again, there are several cases where a charge has been given and nonetheless this court has reversed on 404B. Again, I think it can be an exceptional case where that happens. Certainly there are a number of cases where they might find a violation and deem it harmless, but in this case, again, it so consumed the trial with the majority of the witnesses and the government arguing and opening and closing that it could not be repaired with that limiting charge. All right. You have time for rebuttal. Thank you. Mr. Sellers. Good morning, ma'am. Please, the court. I'm here on behalf of James Clish who was a tax preparation business after the American tax information that's been previously discussed about. The issue for Mr. Clish was the American tax information, as previously stated, dominated the trial. None of it pertained to Mr. Clish or his conduct. Your Honor just asked about a limiting instruction, which I believe that goes to the heart of Mr. Clish's argument. The government, I mean, the limiting instruction that the court gave, I believe, and I would have to say, I believe it was appropriate. However, I think the issue is whether or not it was sufficient based on the evidence that was presented. And in looking at... Can you clarify? I'm sorry. Can you clarify really quickly? Was there just a limiting instruction at the time the evidence was admitted and maybe repeated throughout the evidence testimony? Or are you just talking about an instruction in the charge? Or is it both? I believe there was limiting instructions given throughout the trial when the evidence was presented. But the problem is for Mr. Clish, where he sits in this, because most of that evidence didn't pertain to Mr. Clish, again, I believe that a jury hearing that instruction, and even if you look at the government's response to our brief regarding Mr. Clish, they kind of brush over that issue and just says, well, there's a limiting instruction. The problem with that is, if you've got fourteen witnesses, you have charts that outline American tax. And in this particular case, the actual number of tax returns in the incident case was about 4,500 tax returns. The American tax returns were about 6,000, a little over 6,000, 6,900. I mean, so there's a 2,400 tax return difference between what actually was a part of this indictment and what the prior bad act stuff was. Isn't it your point that Mr. Clish was never employed at American tax? That's correct, Your Honor. He was never employed. He was a tax preparer. And even if you're looking at it in comparison, Mr. Clish only did 547 tax returns out of a total at Sunbelt was 4,500. I mean, he did 12% of the taxes that the government put into evidence. Another point on Mr. Clish, the substantive counts of the indictment against Mr. Clish were all dismissed. All the defendants had three counts for actually substantive counts of preparing false tax returns. The reason they were dismissed is because most of these witnesses couldn't identify Mr. Clish as having prepared his tax returns. So with that being said, that what's left is a conspiracy count. Well, the problem with that conspiracy count is there's all this overwhelming evidence that's been put on from American tax. And so Mr. Clish has just lumped in his guilt by association, which was the issue. I see my time is limited, so I'm going to segue to my mitigation argument role. I think it fits into this. Again, if you do a comparative analysis and the government argues, and respectfully I was asked by the district court judge, was Mr. Clish an average participant? Yes, he was. Tax preparers are average participants. The problem with that is even an average participant, you still have to compare them to the other average participants. So in this case, Barefoot did 2,000 taxes, 2,047 taxes. Clish did 547 taxes. Again, in a comparative analysis, Barefoot did 45% of the taxes done by Sunbelt to Clish's 12%. If you look at case law, the courts have granted mitigating roles where there's clearly a distinction between the role that Mr. Clish played and the roles that other people played. He didn't gain a financial benefit. There's no reason to charge organizational. He just worked there. So it's similar to a drug case. If you have two kilos of drugs, and that's the head drug dealer, you have 2,000, I'm just comparing it to Barefoot, 2,000 tax returns prepared by Barefoot. You bring that number down, compared to Clish, I mean, if you're looking at numbers and doing a comparative analysis, he's only done 12% compared to Barefoot. That should be someone who was deserving of a mitigating role based on the fact that the facts show he was limited in his conduct compared to others. What's your strongest case for the mitigating role? What's your best case? Your Honor, my best case would be, and I had it, it would be Castro. And in that case, what the issue was is, and the argument, essentially, the central part, courts indulged on that question, and I have my, I had just written that down. Roll off your tongue, Counselor. I'm sorry, Your Honor. How are you going to get that? Enough less than average participant. That was Castro. Enough less than average participant. If you're doing a comparative analysis, Clish is enough of less than the other average participants. That's why he should be entitled to the mitigating role. Thank you.  Thank you. All right. Thank you, sir. Mr. High. No, you have two more lawyers, another lawyer. The government is anxious. May it please the Court, Terrence High on behalf of Christopher Randall. Your Honor, Christopher Randall originally worked with Casey Earnest at American Tax in 2007. Subsequently, Mr. Earnest and Mr. Randall worked together at Sunbelt Tax Services in 2014. In this particular case, Your Honor, not to plow any new ground, Your Honor, this is a case where the Court did give limiting instructions regarding the evidence, but once the genie is out of the bottle, Your Honor, there's no putting the genie back in. In this particular case, as it relates to testimony regarding American Tax, reviewing the testimony that was given four days, days two through day five of the trial, the phrase American Tax was mentioned during trial testimony 134 times, Your Honor, during those four days, just those four days of testimony. The Court had good intentions with the limiting instructions, but the Court got it wrong, Your Honor. The evidence regarding American Tax should not have been . . . It was very pervasive throughout the trial and the effects of it are what made the case unfair to my client, Your Honor. This jury that we had was capable of deterring innocent and guilt based strictly upon Sunbelt without any references by the government to American Tax and evidence being put on regarding American Tax in this particular case, Your Honor. Were there any individual counts against your client? Yes, Your Honor. Was he convicted or acquitted on those? He was convicted on the conspiracy counts, Your Honor. Okay. Yes, ma'am. That's all I have. All right, sir. Thank you. Now, Mr. Ellenwood. Thank you, Your Honor. May it please the Court, Todd Ellenwood for the United States. One factual matter to correct. Mr. Randall was convicted with your last question of one of the substantive counts of filing a false tax return. I believe it was count eight. All right. So, the focus has been on 404B. That's the main issue that all three defendants talked about. The heart of the case was the testimony of ten client witnesses who were all clients of Sunbelt. If all ten of them had previously been at American and had a return prepared there and had that admitted into evidence, that would have been standard, down the middle, 404B evidence. But that's not the record here. You've heard a lot about this being a deluge or a tidal wave. It was not. Of the ten witnesses, ten client witnesses, only two had returns admitted into evidence that were from American. Margaret Johnson and Stacey Sanders. There were three returns over those two witnesses. Doesn't that really, it says that there were those ten witnesses, but there were all of those agent witnesses. Right. So, I don't know whether the heart of the case was these ten witnesses saying, yes, this person prepared my taxes, and I didn't go to school during that time. Or if the heart of the case is these very knowledgeable agents coming in, marching in and talking about all of this other stuff. Many, many, many agents. Well, let me finish and then I'll address that, Your Honor. Two of the witnesses who talked about American talked about American on cross. It was elicited by the defense. Most of the ones other than the two I identified, Ms. Johnson and Ms. Sanders, it was extremely brief. They would be asked, and do you remember why you first started using Sunbelt Tax? Mr. Relich said, my mother was going to American Tax Services. I think that's who it was. And then she started using Sunbelt. Ms. Stamps was similar. I'm not talking about the fact witnesses. I'm talking about the agent witnesses. Can you please address the agent witnesses? There were three witnesses from the IRS. One of them, Ms. Wade, only did an initial interview with Mr. Randall. Her testimony spans eight to nine pages on direct examination. She says that she went, did the initial interview with Mr. Randall. They said that their documents were at a different location. The IRS accommodated them by having a revenue agent who was physically located closer to the documents to do it. Are you talking about American Tax? American Tax. Why? Yes, Your Honor. So, Ms. Wade testified very, very briefly. And if you add up the pages for Mr. Thomas, Revenue Agent Thomas, Revenue Agent Dunaway, and Revenue Agent Wade, it's about 49 pages out of the 1,400 pages in the jury trial volumes. Their testimony was 404B evidence because it provides notice and some of the other legitimate 404B considerations. Motive, intent, plan, knowledge. And because the defense all focused on this being taxes being confusing and that this could be an accident or a mistake, they've opened the door as to absence of mistake or lack of accident. The court gave, I think by my count, six instructions during the trial. In my brief, I had four. I think I found two others. But basically, virtually every time that it came up, sometimes it was brief, but sometimes it was very fulsome. It would say, you've heard evidence about tax returns allegedly prepared by Defendants Ernest and Randall. So that goes to the issue with Mr. Clish. It's clearly defined. The time period and the two different companies line up perfectly. A jury can understand this without any confusion. If it predates the indictment and it predates Sunbelt, it's not allowed to be used except for the 404B purposes. Typically, there's a charge conference with counsel before the trial starts to go over with all these charges. There's no secret to anybody that 404B's coming in and there's a charge conference. Judge says, this is what I'm giving, yada, yada, yada. I'm going to give these charges after the testimony. I'm going to give them at the end and on and on. So at the charge conference, on the record or otherwise, did anybody on the other side object to the proposed charge, which I assume were the patterns, or submit a different set of instructions to be given to the jury? And if so, tell me where that is in the record. As to your first question, the judge did the charge conference off the record, and so we don't know what the debate was, but then he gave them an opportunity to object, and none of the parties objected to the proposed jury instructions at the charge conference. The same is true of the instruction that he gave through trial. He said, I'm going to give the standard 404B instruction, and everybody agreed with that. And in fact, pre-trial, when this issue was coming up, Mr. Clish didn't even file an objection to the government's motion to have admitted the 404B evidence because it didn't contain them. I'm not suggesting by my question that the fact that they didn't object, it still couldn't be a problem, but I just always . . . If there was something bad wrong with that charge, they would have said so. It's not impossible, but generally, if the judge uses the Fifth Circuit pattern charts, it's a little tough to get yourself in Dutch. And so, if we understand that that's what's given, I mean, that just takes us to another terrain. I'm not saying that obviates the potentiality of there being error, et cetera, et cetera, but since so much has been made about the 404B, I just kind of wanted to understand if the judge rejected some charge they made, and if that issue is the case. But I'm clear where we're headed. And I think your second question, Your Honor, was whether or not they had submitted, proposed jury instructions. There's an indication, there's a record that says the courts exhibits, like 1 through 9, and for whatever reason, most of those are not in the actual electronic record. So, they did submit something, but we don't know what it was. Okay. Can you address the alleged constructive amendment of the indictment argument? Yes. As to Count 1, the argument that there was constructive amendment, the evidence presented comports of the allegations in Count 1, the jury was appropriately instructed, all the charges related to Sunbelt in the time period from January 2015 to the time of the indictment, really the argument is a repackaged 404B complaint about the evidence related to American, but the evidence related to American was appropriate under 404B. Mr. Earnest also claims that Counts 5 and 7 were constructively amended. The introductory paragraph to those charges says deductions. It could have been written better. It should have said deductions and credits. But the counts are in a table format, and the table for each specific count says Schedule A deductions and education credits. So, when read as a whole, the indictment gives clear notice of what was charged. It's not even a variance because of that, but if it was a variance, there'd be no prejudice, because he was given notice in the indictment and in the government's trial brief as to what would be presented. And then to top it off, the judge, to be extra conservative, had a special verdict form, and the jury found unanimously that Mr. Earnest was guilty based on false Schedule A deductions and separately improper education credits. Did these charts about American go back to the jury? Could you say that again, Your Honor? Did the charts about American go back to the jury, or were they demonstrative exhibits? I wasn't sure what counsel was talking about when he alluded to a chart that had all of the evidence that related back to American. One of the exhibits that Mr. Earnest alleges was error was Government Exhibit 605, which the original draft of it had false education credits based on no 1090ATs going back further, but the government stripped that out. Exhibit 605 only has from 2014, tax year 2014, which is filing season 2015, to 22. So, as far as I can recall from looking at the record, the only exhibit that the jury saw related to this kind of broader net of false education credits was Exhibit 605, which only pertains to Sunbelt. Can you address the argument in the context of Mr. Plish, who probably has the best argument because he didn't ever work at American, and he was not convicted of specific things other than the conspiracy? Can you address the argument in the context of him, please? Again, the delineation was clear. The jury was instructed that this evidence didn't pertain to Mr. Plish, that it pertained to Mr. Randall and Earnest because they had worked there. The returns that were put into evidence, there were only three of them from American. They were all prepared by Mr. Earnest. I don't understand your focusing on returns because you have the agents apparently testifying that there was substantial problems with the way American did business. And, I mean, they said that American was referenced 134 times in four trial days in both the opening and the closing. I mean, if that's all accurate, it could have been a very substantial 49 pages and 134 references. The government in its opening said, you will learn that years before the crimes at issue, the IRS put Casey and Chris on notice that they needed certain information and documentation. I think their allegation in their brief is that the government was saying, look at this substantively. They were not. They were saying it was notice evidence. In closing, the government said, the point of these audits, ladies and gentlemen, is not whether Casey and Chris were preparing false returns back in American tax. It was that these audits put them on notice. So I don't think the government did anything inappropriate with the evidence related to American tax. And Your Honor raises the point about it being referenced 134 times. I have a hard time putting that into context. There were seven volumes, I thought. So I thought the jury trial was seven days long. I might be wrong about that. But, again, all of the evidence was standard 404B evidence. I don't think the volume of it was particularly high. I mean, some of these references are completely fleeting. A witness would be asked, how did you come to know Mr. Earnest? And the answer is, at American tax. And then the government would move on to Sunbelt. The other reason why the evidence from American is legitimate 404B evidence is that they changed up the way they did the scheme. And part of this is telling the whole story. Because they got fines, Mr. Earnest could not own the business in his name. So he paid a nominee at first to be the owner of Sunbelt. Then he had his wife be it. They also then came up with a system of trying to paper the file, basically CYA paperwork. Lots of the witnesses testified that they signed blank documents that would be then filled in later. And the reason why the conspirators were doing this was because they had been caught by the IRS through these civil audits before. I hate to tell you, but I think a lot of CPAs get signatures before the tax return is final. That would be inappropriate. I don't think two wrongs make a right, Your Honor. Okay. Well, now I know. I've got a question. The thing you read said they put them on notice back then that they had to have these documents or something. They actually didn't have to have some of them back then because it wasn't required. And wasn't that the thing that the judge even got confused on? It seems that the argument was that they needed to have these supporting documents back then when in actuality that's not true. Yes, Your Honor. The judge was confused about that. So that thing you read would be confusing. Yes, Your Honor. The purpose of the audits is earned income tax credit fraud. And that's what they're looking for. And so they go in and they ask for a certain amount of records. They get them and they look at it. If they also see that there are other problems, they can document those. They cannot fine them, but they can document them. If they see that there are Schedule A deductions that are not documented or appropriate, they can make a comment on it. It doesn't go to the fine amount, but it goes to notice. Mr. Thomas was asked, what type of documentation would you expect to see documenting the education credits? Ideally a 1090-80. And just to give you a little bit of background for this, while it wasn't required at that point for there to be a 1090-80 in the file, it was required for the education institution to issue one to both the IRS and the student. So they should have these 1090-80s, and one would expect them to be in there. It was not a requirement. They should have them because it wasn't required. None of it was required. Right. But what they would say is that they would look at the files and they would see people who had a W-2 job, also a Schedule C business, which raises a red flag. They had children and they were a full-time student. And so once these red flags are raised, then a tax preparer has a duty to avoid incorrect, inconsistent, or incomplete information. So again, they're not fined for this, but they are told in the notice, you did not have documentation. It doesn't have to be a 1090-80. Mr. Thomas testified that it could be a check, a bill, an invoice from the institution. There should be something in the file signaling the appropriateness of this fairly large credit. It's a $4,000 refundable tax credit. It's not a deduction. It's a refundable credit. But there's not a requirement that there be something in the file. There is not a requirement that there be a 1090-80, and there's not an across-the-board requirement that there be evidence in the file for the education credits. Do you dispute that the district court was actually confused by this point? From reading the record, I didn't get that impression. Are you asking it, and do I think that the trial judge thought that the 1090-80 was required? I don't think he thought that. And that they had been, in fact, fined or disciplined in some way in the American stage of it regarding this point. Right. But the heart, to me, what I would have wanted as a prosecutor in this is the evidence of the false Schedule A's and Schedule C's. This case was not indicted and tried based solely on education credits. Maybe looking backwards at what it looks like because of the sentencing issues, and the sentencing was so driven by education credits. So it's the answer to my question that you do not dispute that the district court at some point was confused. But it's not a criticism of the district court. It's what was presented to the district court, and it had to be clarified. Is that true or not? I remember there being one point where I thought that he was slightly confused about the education credit. Yes, Your Honor. Does that confusion translate anywhere in here, though, to what the jury was charged with in the presentation of the evidence? No, I don't think it rose to that level at all, and it certainly isn't some sort of clear or reversible. Speak to Mr. Randall's argument about his lawyer says he was peripheral. He was caught up in the net, so to speak. He was marginal, et cetera. So speak to that argument. He started the year after. He started in 2016. He prepared through year 2022, so that's six years. He prepared 547 returns that didn't have a 1098-T in it. The district court found that he was essentially the same as the average participant, not substantially less. Again, just to point out and give some context that I don't think I put in my brief, he prepared 547 returns without a 1098-T. Overall, to say how much involved he was in the business, he prepared over 4,200 tax returns at Sunbelt. The fact that Mr. Earnest and Randall played a larger role in the conspiracy is not a basis for a mitigating role reduction for Mr. Clish. Mr. Earnest got a four-point enhancement for being the leader, and Mr. Randall got a three-point enhancement for being a manager in a criminal scheme that involved more than five culpable participants. The fact that there are other tax preparers who prepared more returns is irrelevant. He needs to be substantially less, and he's not rebutted the evidence in the PSR, as the district court found. Any error would be harmless. The court varied down significantly from Mr. Clish. It was a range of 97 to 121. He gave 50 months and said explicitly any errors in the calculations of the guideline would not alter the sentence. It would be no lower than 50 months. And if the court doesn't have any other questions? I guess we don't. Thank you, sir. Thank you, Your Honor. Okay, Mr. Mueller. Thank you. One quick point to follow up on Your Honor's question, and it's on page 32 of our opening brief. The quote from the district court judge was, I thought they got fined related to education credits when we were reminding them that they didn't get fined for education credits. So, again, I don't fault the district court for the confusion, but it's clearly this was kind of an esoteric and confusing topic, and this leads to the prejudice. The government keeps saying, well, we didn't use it to show propensity to break the tax laws. We used it to show they were on notice. But I think Chief Judge Elrod's questioning was the one . . . at the time in which these audits were done. Notice of what? Now, related to that, what Revenue Agent Thomas actually did testify to is, again, yes, we had the opportunity to cross-examine, but now we're cross-examining a witness in front of the jury who's speaking with the authority of an IRS agent who's saying, well, it may not have been required, but I would have liked to see that in the file. And again, we're now battling, you know, this conduct that, again, occurred apparently, at that point it was 2012. That audit was 2012. So, you know, three years prior to even the indictment period, we're talking with an agent and sort of quarreling about whether or not certain documents were required to be in the file when nobody disputes the law says they weren't required. So whether this agent's opinion was that they should be is really beside the point. But I think it underscores the distinction between, yes, 404B can come in for those limited purposes, but what this Court has said in Williams and others is it can't be just for a general, this is someone who violates the tax laws or should have known to follow the tax laws. I mean, we're all required to follow the tax laws. We all, you know, should know that we're required to file it. The 404B has to be related enough. And so the fact that they were on notice that certain documents weren't in a file of a prior business, again, when those returns were not actually audited and determined to be false or fraudulent, they were just, let's check the paperwork. What's the most poignant part of the record we need to look at in terms of your argument? Because I'm still waiting to be persuaded that this isn't heartland 404B evidence, which any good defense counsel wants to keep out. Yes, Your Honor. No, I think . . . What should I be burrowing in on in this record to really come to grips with what you're saying, you know, this went over the line? I think if you compare the three revenue agents' testimonies, Thomas, Wade, and Dunaway, and you overlay that with how the government described the conduct in opening and closing, again, they opened the case with one of the first things they told the jury was, you're going to learn that Mr. Earnest and Mr. Randall have been committing tax fraud for a long time starting at American Tax Service. This wasn't introduced in trial for a limited purpose to show notice and then an instruction was given. They led with this. Fundamentally, you know, like I do, the judge is going to say what the lawyers say is not evidence. You said stuff in your closing argument. The judge says it's not evidence. It's the lawyer's argument. I'll give you the instructions on what's the evidence to follow, yeah, yeah, yeah. So, you know, I get it, but the fact that they said it in the argument, you argue, the judge tells them. Lawyers, what they say, that's not evidence. The jury's channel. So I get your point, but . . . Yes, Your Honor, but respectfully, the cases that this circuit has reversed, 404B, they've made it, they've said part of the reason why was because . . . All right, I'm going to ask you as you go down. What's the strongest case, strongest AJAX on a 404B reversal that I ought to go back to my chambers and look at? I would say there's three cases . . . No, just tell me the one. I apologize, I'm being . . . I'll look at all three of them, but I'll be, you know, tired eyes, but I'm just saying there's got to be a case that sends me to the other cases. Because there are a whole lot of 404B evidence cases, and every case is different, and so I just want to make sure I don't miss what is the strongest . . . Yes, Your Honor, I would say . . . Where we reversed on 404B, where the trial judge has given the pattern instructions. If it's in your brief, I'll find it. I just thought it might roll off your tongue. It rolls off my tongue as Fortenberry.  Because that preceded Cresdor, but those were the two, if I was able to give two. But Fortenberry would be the one I would invite Your Honor to take a look at on that point, and I believe my time is up unless there are any other questions. It is. Thank you. All right. Mr. Sellers and Mr. High, you were court-appointed attorneys. You did a very good job for your clients, and the court appreciates your service. Thank you. All right, sir.